UNITED STATES of America,
Plaintiff,

v.

John SINCLAIR, Lawrence Robert "Pun"
Plamondon, John Waterhouse For-
rest, Defendants.

Crim. No. 44375.

United States District Court,
E. D. Michigan, S. D.

Jan. 26, 1971.

Ralph B. Guy, Jr., U. S. Atty., J. Kenneth Lowrie and John H. Hausner, Asst. U. S. Attys., for plaintiff.

Leonard Weinglass, Newark, N. J., for John Sinclair.

William M. Kunstler, New York City, for Lawrence R. Plamondon.

Hugh M. Davis, Jr., Detroit, Mich., for John Waterhouse Forrest.

AMENDED

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR DISCLOSURE OF ELECTRONIC OR OTHER SURVEILLANCE

KEITH, District Judge.

After the return of the indictment in the present case, but before the commencement of trial, counsel for the defendants filed a motion for disclosure of electronic surveillance in accordance with the United States Supreme Court's holding in Alderman v. United States,

394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In essence, the motion requests an order from the Court directing the Government to divulge to defendants all logs, records, and memoranda of electronic surveillance directed at any of the defendants or co-conspirators not indicted. It further requests that a hearing be held to determine whether any of the evidence upon which the indictment is based or which the Government intends to introduce at trial is tainted by such surveillance. In response to this motion the Government submitted an answer which stated that at that time the Government had no knowledge of any electronic surveillance pertaining to any of the defendants but that a further inquiry was then being conducted with the Federal Bureau of Investigation. In its answer the Government stated that the United States Attorney's Office would advise the Court if and when any evidence of electronic monitoring was discovered and, in such event, would file a reply to the defendants' motion to disclose.

Subsequently, the Court received an affidavit signed by the United States Attorney General, John N. Mitchell, stating that he had authorized and deemed necessary the wiretapping of certain of defendant Plamondon's conversations. Sealed records and files were submitted with this affidavit for the review and inspection of the Court *in camera*. Also accompanying these materials was a motion to dismiss the defendants' request for disclosure of the surveillance evidence and a brief in support of said motion. In both the affidavit and the above-stated brief the Attorney General has certified that public disclosure of the particular facts concerning this surveillance would prejudice the national interest. It has therefore been requested by the Government that it be notified prior to any decision regarding disclosure so that it can determine how it will proceed with the case. Defendants have submitted reply briefs in support of their position that this electronic evidence must be submitted to them for their examination. Oral argument was heard regarding this issue on January 14 and 16, 1971.

 In Alderman v. United States, *supra*, the Supreme Court held that the Government must disclose and make available to a defendant who has the proper standing, any conversations he participated in or that occurred on his premises which the Government overheard during the course of any illegal electronic surveillance. The clear purpose of this ruling is to reinforce the long-standing exclusionary rule of the Fourth Amendment which prevents the Government from building its case upon evidence which is obtained by unconstitutional methods. In the instant case, since defendant Plamondon was a party to the monitored conversation, he has the requisite standing to object to the evidence and to request disclosure. See *Alderman, supra*, at 176, 89 S.Ct. 961. It thus becomes necessary to determine whether the surveillance involved herein was in violation of the defendant's Fourth Amendment rights. Disclosure is necessary only when the District Court determines that the surveillance was conducted illegally. Concurring Opinion of Mr. Justice White in Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1968).

The position of the Government in this matter, simply stated, is that the electronic monitoring of defendant Plamondon's conversations was lawful in spite of the fact that the surveillance was initiated and conducted without a judicial warrant. In support of this position, the Government contends that the United States Attorney General, as agent of the President, has the constitutional power to authorize electronic surveillance without a court warrant in the interest of national security. The validity of the Government's position on this issue, under the Fourth Amendment, has not yet been decided by the Supreme Court. See Footnote 23 in Katz v. United States, 389 U.S. 347, 358, 88 S.Ct. 507, 19 L.Ed.2d 576. There have been, however, a few District Court cases

which concern themselves with this issue. In presenting its oral argument the Government relies heavily upon United States v. Felix Lindsey O'Neal, Criminal No. KC–CR–1204 (D.C.Kan., September 1, 1970), a case in which the District Judge made an in-court ruling that surveillance pursuant to the authorization of the Attorney General was lawful. See, also, United States of America v. Dillinger, Criminal No. CR 180 (N.D.Ill., February 20, 1970); United States v. Clay, 430 F.2d 165 (5th Cir. 1970) cert. granted, 400 U.S. 990, 91 S. Ct. 457, 27 L.Ed.2d 438.

Particularly noteworthy, and the basis of defendants' oral argument in support of their motion for disclosure, is the exceptionally well-reasoned and thorough opinion of the Honorable Judge Warren Ferguson of the Central District of California. United States v. Smith, 321 F. Supp. 424 (C.D.Cal.1971). The affidavit and circumstances which were represented before Judge Ferguson are identical to the affidavit and issues now before this Court for consideration, and the Court is compelled to adopt the rule and rationale of the *Smith* case in reaching its decision today.

The great umbrella of personal rights protected by the Fourth Amendment has unfolded slowly, but very deliberately, throughout our legal history. The celebrated cases of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), became the cornerstone of the Amendment's foundation and together these two decisions set the precedent for the rule that evidence secured in violation of a defendant's Fourth Amendment rights may not be admitted against him at his trial. In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the familiar legal simile of the "poisonous tree" became the pillar for the Court's ruling that the exclusionary rule of *Weeks* was to be expanded to prohibit the admission of any fruits derived from illegally seized evidence. The final buttress to this canopy of Fourth Amendment protection is derived from the Court's declaration that the Fourth Amendment protects a defendant from the evil of the uninvited ear. In Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L. Ed.2d 734 (1961), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576, the Court ruled that oral statements, if illegally overheard, and their fruits are also subject to suppression.

■ In the instant case the Government apparently ignores the overwhelming precedent of these cases and argues that the President, acting through the Attorney General, has the inherent Constitutional power: (1) to authorize without judicial warrant electronic surveillance in "national security" cases; and (2) to determine unilaterally whether a given situation is a matter within the scope of national security. The Court is unable to accept this proposition. We are a country of laws and not of men.

■ The Government contends that the President can conduct warrantless surveillances under the authority of the Omnibus Crime Control and Safe Streets Act of 1968. The effect of this comprehensive statute is to make unauthorized surveillance a serious crime. The general rule of the Act is that Government surveillance and/or wiretapping is permitted only upon the showing of probable cause and the issuance of a warrant. An exception to this general rule permits the President to legally authorize electronic surveillance "to obtain foreign intelligence information deemed essential to the security of the United States."

The Act also provides:

Nothing contained in this chapter or in section 605 of the Communications Act of 1934 (48 Stat. 1143; 47 U.S.C. 605) shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign

intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against the overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. * * *

▪▪▪ In addressing himself to the relevance of this statutory provision to the warrantless surveillance issue, Judge Ferguson of the California District Court, in United States v. Smith, *supra*, stated succinctly that: "Regardless of these exceptions in the criminal statute, the President is, of course, still subject to the constitutional limitations imposed upon him by the Fourth Amendment." This Court is in full accord with this rationale for it is axiomatic that the Constitution is the Supreme Law of the Land.

The contention by the Government that in cases involving "national security" a warrantless search is not an illegal one, must be cautiously approached and analyzed. We are, after all, dealing not with the rights of one individual defendant, but, rather, we are here concerned with the possible infringement of a fundamental freedom guaranteed to all American citizens. In the first Supreme Court case involving wiretapping, Justice Brandeis, in his dissenting opinion, concisely stated the issue at stake in a case of this nature:

"The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. To protect, that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment." Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928).

It is to be remembered that the protective sword which is sheathed in the scabbard of Fourth Amendment rights, and which insures that these fundamental rights will remain inviolate, is the well-defined rule of exclusion. And, in turn, the cutting edge of the exclusionary rule is the requirement that the Government obtain a search warrant before it can conduct a lawful search and seizure. It is this procedure of obtaining a warrant that inserts the impartial judgment of the Court between the citizen and the Government.

▪▪▪ Generally, in order to search a citizen's premises, law enforcement agents must appear before the Court or Magistrate and request a warrant. The request must describe the place to be searched, matter to be seized, and, most importantly, there must be a statement made under oath that the Government has probable cause to believe that criminal activity exists. Through this procedure (the maintenance of a system of checks and balances between the arms of Government), we as citizens are assured the protection of our constitutional right to be free from unreasonable searches and seizures. Prior to the issuance of any search warrant the Court must independently review the request to search and make an objective determination whether or not probable cause of some criminal activity exists, which activity would make the search reasonable and not in violation of Fourth Amendment rights. Absent such a requirement of an objective determination by a magistrate, law enforcement officials would be

permitted to make their own evaluation as to the reasonableness, the scope and the evidence of probable cause for a search. This Court is loath to tolerate the existence of such a condition.

■ In its brief the Government cites several cases which have held that the President has the authority to authorize electronic surveillance which he deems is necessary to protect the nation against the hostile acts of *foreign* powers. Using these as precedents the Government submits that the President should also have the constitutional power to gather information concerning *domestic* organizations which seek to attack and subvert the Government by unlawful means. This argument, however, is untenable. Although it has long been recognized that the President has unique and plenary powers in the field of foreign relations (Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948)), in the area of domestic affairs the Government can act only in limited ways. See Brandenburg v. Ohio, 395 U. S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

The Government also asserts that the President's authority for warrantless monitoring stems from a confidential memorandum written by President Roosevelt in 1940. But, if the President is given power to delegate who shall conduct wiretaps, the question arises whether there is any limit on this power. Furthermore, the *Smith* case, *supra,* in tracing the history of the Roosevelt directive, establishes that the Presidential power of surveillance is specifically limited to "exceptional cases"—cases of a non-criminal nature or which concern the country's national security.

■ An idea which seems to permeate much of the Government's argument is that a dissident domestic organization is akin to an unfriendly foreign power and must be dealt with in the same fashion. There is great danger in an argument of this nature for it strikes at the very constitutional privileges and immunities that are inherent in United States citizenship. It is to be remembered that in our democracy all men are to receive equal justice regardless of their political beliefs or persuasions. The executive branch of our government cannot be given the power or the opportunity to investigate and prosecute criminal violations under two different standards simply because certain accused persons espouse views which are inconsistent with our present form of government.

■ In this turbulent time of unrest, it is often difficult for the established and contented members of our society to tolerate, much less try to understand, the contemporary challenges to our existing form of government. If democracy as we know it, and as our forefathers established it, is to stand, then "attempts of domestic organizations to attack and subvert the existing structure of the Government" (see affidavit of Attorney General), cannot be, in and of themselves, a crime. Such attempts become criminal only where it can be shown that the activity was/is carried on through unlawful means, such as the invasion of the rights of others by use of force or violence.

■ The affidavit of the Attorney General of the United States makes no assertion that at the time these wiretaps were installed, law enforcement agents had probable cause to believe that criminal activity (e. g. the illegal overthrow of the Government through force or violence) was being plotted. Indeed, if such probable cause did exist, a warrant to search may have properly been issued.

In the opinion of this Court, the position of the Attorney General is untenable. It is supported neither historically, nor by the language of the Omnibus Crime Act. Such power held by one individual was never contemplated by the framers of our Constitution and cannot be tolerated today. This Court adopts the holding of Judge Warren J. Ferguson in United States v. Smith, 321 F.

Supp. 424 (C.D.Cal.1971), which was that:

"* * * in wholly domestic situations there is no national security exemption from the warrant requirement of the Fourth Amendment. Since there is no reason why the government could not have complied with this requirement by obtaining the impartial judgment of a court before conducting the electronic surveillance in question here, it was obtained in violation of the Fourth Amendment."

This Court hereby ORDERS that the Government make full disclosure to defendant Plamondon of his monitored conversations. The Court, in the exercise of its discretion, further ORDERS that an evidentiary hearing to determine the existence of taint, either as to the indictment or as to the evidence introduced at trial, be conducted at the conclusion of the trial of this matter.