**Keith FORSYTH**

v.

**Richard G. KLEINDIENST, et al., John N. Mitchell, Appellant.**

**No. 82–1812.**

United States Court of Appeals,
Third Circuit.

Jan. 20, 1983.

David Rudovsky, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for appellee.

J. Paul McGrath, Asst. Atty. Gen., John J. Farley, III, Director, Torts Branch, Gordon W. Daiger, and Larry L. Gregg, Attys., Torts Branch, Dept. of Justice, Civil Div., Washington, D.C., for appellant.

Before WEIS, SLOVITER and BECKER, Circuit Judges.

## OPINION SUR GRANT OF STAY

WEIS, Circuit Judge.

Plaintiff Forsyth has moved to dismiss this appeal as interlocutory, and defendant Mitchell has asked for a stay of trial. We will grant the stay, deny the motion to dismiss the appeal on absolute immunity, and refer the motion to dismiss the appeal on qualified immunity to the merits panel.

Keith Forsyth filed this suit against former Attorney General John Mitchell and others [1] to recover damages for alleged constitutional and statutory violations. Mitchell authorized a warrantless wiretap of one William Davidon in 1970 that resulted in government officials overhearing conversations he had with the plaintiff. The factual allegations underlying the claim are set forth in a previous opinion in this case. *See Forsyth v. Kleindienst,* 599 F.2d 1203, 1205–06 (3d Cir.1979) (Forsyth I), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981).

In the earlier appeal, the district court had denied defendant's motion for summary judgment on the basis of absolute immunity. We concluded that the order was appealable because the absolute immunity defense, like that of double jeopardy, *see Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), protected the right not to be subjected to trial. *See also Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).

---

1. After the notice of appeal was filed, plaintiff dismissed his claims against Albert Cooper and David Porter.

On the merits, we held that the "Attorney General's decision to authorize the warrantless electronic surveillances is protected by the shield of absolute immunity when it is made in the context of a quasi-judicial function; however, when the decision arises in the context of a purely investigative or administrative function, the decision will not be protected by absolute immunity." 599 F.2d at 1215. The district court had held that defendant acted as an administrator rather than an officer of the court, but had "provided us with no statement of the reasons for its decision." *Id.* at 1216. Consequently, we remanded to the district court for further consideration and application of the test we enunciated.

On remand, the district court again denied summary judgment to the defendant, finding that he was not entitled to absolute or qualified immunity. Finding no dispute about the fact that plaintiff had been overheard by virtue of the warrantless wiretap, the court entered summary judgment in favor of the plaintiff and against defendant on liability only. Since the record demonstrated that plaintiff had not suffered any compensatory loss, the case was set for trial on punitive damages only.

The defendant asked the district court for certification of the liability issue under 28 U.S.C. § 1292(b), and a stay pending appeal. Both motions were denied. Defendant has now appealed and seeks a delay of trial until this court has decided the issues he has raised here.

We first address plaintiff's contention that the appeal should be dismissed as interlocutory and frivolous. *Forsyth I* established that a pretrial denial of summary judgment on the basis of absolute immunity is appealable. That precedent is binding on this panel, as is *Nixon v. Fitzgerald.* Consequently, the denial of summary judgment because of a finding by the district court that there is no absolute immunity presents us with an appealable order. We need not,

and do not, decide at this juncture whether the denial of summary judgment on the ground of a lack of qualified immunity is also appealable. We note only that the question is not free from difficulty in the wake of the Supreme Court's pronouncements on the policy underlying the qualified immunity doctrine. *See Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *McSurely v. McClellan,* 697 F.2d 309, 312–316 (D.C.Cir.1982) (denial of qualified immunity is appealable). That issue will be referred to the merits panel.[2]

As the Supreme Court has made clear, absolute immunity protects the right not to be subjected to trial—a right that is lost if appellate review awaits final adjudication. It follows therefore, that a stay must be granted or the defendant will be deprived of the benefits of adjudication before trial. The fact that the district court granted summary judgment for the plaintiff on liability cannot deprive the defendant of his right to an immediate appeal which accrued on denial of his motion for summary judgment.

The defendant contends that his wiretap authorization had a direct judicial analogue and that *Harlow* raises the availability of a special functions absolute immunity. In the limited time available for the disposition of this motion, we cannot conclude that the appeal from the denial of absolute immunity is frivolous.

Our conclusion is not altered by the fact that only a trial on punitive damages remains in this case. In the present posture of the litigation, it has been determined that the plaintiffs' conversations were overheard on three occasions. Although the plaintiff sustained no loss, in the absence of immunity of the defendant, a judgment for nominal damages would be entered. Only to that extent has there been a liability finding.

---

**2.** The denial of qualified immunity in this case was characterized by the district court as one of law rather than fact. That holding therefore would not be affected by the trial on punitive damages. We note that the district court's adverse ruling on the state of the law in effect at the time the wiretaps were authorized differs from that of the court of appeals in *Sinclair v. Kleindienst,* 645 F.2d 1080, 1084 (D.C.Cir.1981).

There has been no determination, however, as to whether punitive damages may be recovered. To determine this issue there must be inquiry into the circumstances surrounding the defendant's activities, his subjective intent, and the presence or absence of malice. We would expect a thorough examination of the background of the authorization, including possibly a review of what prompted the wiretaps, the advice defendant received from his subordinates, corroborating testimony from those sources, and other similar testimony. If, after that evidence, the fact finder determines that punitive damages are due, then the issue would shift to the proper amount. In connection with this phase of the case, testimony about defendant's financial condition would become relevant.

In sum, the inquiry into the factual issues remaining will not likely be merely a cursory one. Indeed, it may be as searching as the trial on the merits would have been in the absence of summary judgment on liability.

We share the concern of the dissent about the burdens under which this court is operating. However, we are not at liberty to disregard the clear precedent of *Forsyth I* on the appealability of a denial of absolute immunity.

Accordingly, defendant's motion for a stay of proceedings in the district court is granted. The motion to dismiss the appeal from denial of absolute immunity is denied. The plaintiff's motion to dismiss the appeal from the denial of qualified immunity is referred to the merits panel.

SLOVITER, Circuit Judge, dissenting.

I dissent from the denial of the motion to dismiss the appeal and from the grant of a stay.

One of the bedrock principles guiding judicial administration in the federal courts is discouragement of piecemeal appeals. The important purposes served by such a policy were reviewed recently by the Supreme Court: "to emphasiz[e] the deference that appellate courts owe to the trial judge" in order not to "undermine the independence of the district judge"; to " 'avoi[d] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment' "; and to "promot[e] efficient judicial administration". *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (quoting *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)).

Exceptions to the policy of appellate review of only final orders are few and narrowly construed. In the main, the exceptions are those set forth by Congress in the Judicial Code, *i.e.,* the provision permitting appellate review of orders granting or denying preliminary injunctions, 28 U.S.C. § 1292(a)(1), and the provision permitting appeals of interlocutory orders when certified to involve a controlling question of law as to which there is substantial ground for difference of opinion where an immediate appeal may materially advance the ultimate termination of the litigation, 28 U.S.C. § 1292(b).

In contrast, the other principal exception to review of final orders, the collateral order exception enunciated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is judge-made and covers only a "small class" of orders. A "collateral order" must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 375, 101 S.Ct. at 674 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)).

The policies which underlie the limitation of interlocutory appellate review are patently applicable in this case. Plaintiff filed his complaint in September 1972 alleging violation of 18 U.S.C. § 2520 and rights protected under the First, Fourth and Sixth

Amendments as the result of the overhearing of his telephone conversations in a warrantless electronic surveillance authorized by defendant, former Attorney General John Mitchell. Following first a stay pending termination of a related criminal matter and then completion of discovery, defendants moved for summary judgment claiming absolute and qualified immunity and plaintiff also moved for summary judgment. The district court denied both summary judgment motions, and this court held that the denial of defendants' motions for summary judgment on the grounds of absolute immunity was appealable immediately under the *Cohen* collateral order doctrine but that the denial of summary judgment on the grounds of qualified immunity could not qualify for immediate review. *Forsyth v. Kleindienst,* 599 F.2d 1203, 1207–09 (3d Cir.1979) (*Forsyth I*), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). The validity of an absolute immunity defense does not easily satisfy the requirement for a *Cohen* collateral order that the issue on appeal must be separate from and collateral to the merits of the action. However, in *Forsyth I* we analogized absolute immunity to a claimed double jeopardy violation held subject to interlocutory review in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The rationale given in *Abney* was that the rights conferred by the Double Jeopardy Clause, which guarantees against twice being put to trial for the same offense, would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentencing. *Id.* at 660–62, 97 S.Ct. at 2040–42. A similar consideration led the Court in *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), to hold that a Member of Congress could appeal the district court's denial of a motion to dismiss an indictment alleging violation of the Constitution's Speech or Debate Clause. The Court held that an appeal lay because the Speech or Debate Clause was designed to protect Congressmen not only from the consequences of litigation but also from the burden of defending themselves. *Id.* at 507–08, 99 S.Ct.

at 2448–49. The common thread running between *Abney* and *Helstoski* is a constitutional right, protected by an express constitutional provision. The absolute immunity defense afforded representatives of the Executive, albeit not constitutionally based, was deemed in *Forsyth I* to be important enough to warrant the same immediate appeal. We recognized that if former Attorney General Mitchell was correct in his claim that he was entitled to absolute immunity from civil liability for his decision to authorize the warrantless electronic surveillance, his right not to be subjected to trial would be irretrievably lost if appellate review must await final adjudication on the merits.

In considering the merits of Mitchell's claim, we rejected his argument that he was entitled to absolute immunity by virtue of his status as a high official of an executive agency. We relied on the Supreme Court's decision in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), in holding that heads of federal executive agencies generally have only qualified immunity when violations of federal constitutional law are asserted. However, we also concluded that under the decision in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Attorney General's decision to authorize the warrantless electronic surveillance is protected by the shield of absolute immunity when it is made in the context of a quasi-judicial function but not when the decision arises in the context of a purely investigative or administrative function. We remanded to the district court to determine whether Mitchell was entitled to the defense of absolute immunity under the legal principles we had enunciated in light of the evidence developed. The Supreme Court denied certiorari, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981), and denied rehearing, 453 U.S. 928, 102 S.Ct. 892, 69 L.Ed.2d 1025 (1981).

On remand, Mitchell chose to submit no additional testimony. Although given the opportunity by the trial court to present any evidence he wished concerning his purpose in approving the wiretaps, he relied on

his previous deposition testimony to oppose plaintiff's motion for summary judgment. The district court reviewed "the uncontested facts" and determined that defendant Mitchell was not engaging in conduct subject to the prosecutorial absolute immunity of *Imbler v. Pachtman. Forsyth v. Kleindienst,* 551 F.Supp. 1247, 1252–1253 (E.D. Pa.1982). The court stressed the deposition testimony by Mitchell who "repeatedly stated that the Davidon wiretap had an investigatory purpose, *i.e.,* to obtain more details about the suspected plot to destroy utility tunnels in Washington, D.C. and to kidnap National Security Council Chairman Henry Kissinger so that the Justice Department, acting through the FBI, might thwart these schemes." *Id.* at 1252. The district court concluded that "the purpose of the wiretap was prevention—not prosecution" and that Attorney General Mitchell "was not in any way weighing factors in order to determine whether and whom to prosecute." *Id.* The district court also held that defendant Mitchell was not entitled to qualified immunity because at the time of the wiretaps at issue in this case, there was clearly established law that made Mitchell's warrantless electronic surveillance an unconstitutional violation of the plaintiff's rights. *Id.* at 1253–1259.

The district court took cognizance of the recent Supreme Court decisions of *Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It held the *Nixon* decision applied by its terms only to the President and not to cabinet officers, such as the Attorney General. *Id.* at 1253–1254. The district court also held that Mitchell did not meet the test for qualified immunity formulated in the *Harlow* opinion. Having granted summary judgment to plaintiff on liability, the district court then scheduled the trial on the remaining issue of punitive damages. Thus, more than ten years after filing his complaint, plaintiff still waits for conclusion of the district court proceedings.

The majority cites two authorities for denying the motion to dismiss the appeal and according review at this interlocutory stage—our decision in *Forsyth I* and the Supreme Court's recent decision in *Nixon v. Fitzgerald.* I believe neither requires this result. Instead, I believe that *Nixon v. Fitzgerald* provides persuasive reason to reject this interlocutory review. In that case, the Court considered as a preliminary matter whether the case had been "in" the Court of Appeals for the District of Columbia Circuit for purposes of Supreme Court certiorari jurisdiction within the meaning of 28 U.S.C. § 1254 (investing the Court with authority to review "[c]ases in" the courts of appeals). The Court held that "[i]n light of the special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," former President Nixon did present a "serious and unsettled" and therefore appealable question to the court of appeals. 102 S.Ct. at 2698.

To apply the approach mandated by the Supreme Court in *Nixon v. Fitzgerald,* we must first inquire whether defendant Mitchell raises a "serious and unsettled" question as to his right to an absolute immunity defense. Otherwise, under *Nixon v. Fitzgerald* the collateral order doctrine is inapplicable. The legal issue of the circumstances under which absolute immunity would be available to defendant Mitchell has already been decided by this court in *Forsyth I.* Significantly, in his papers before us Mitchell does not suggest that the district court either misinterpreted or misapplied our decision in *Forsyth I.* Nor does he suggest that there are any disputed issues of fact. Thus, only if the Supreme Court's recent pronouncements on immunity in *Nixon v. Fitzgerald* or *Harlow v. Fitzgerald* mandate reversal of our precedent in *Forsyth I,* as defendant Mitchell suggests they do, would there be any basis for interlocutory review on the basis of the collateral order doctrine.

It is apparent from reading those opinions, a task we cannot shirk because of the limited time available for disposition of this motion, that there is no basis for any contention that they change the law on absolute immunity as enunciated in *Forsyth I.*

As the district court found, the opinion in *Nixon v. Fitzgerald* is by its terms limited to the President. The opinion in *Harlow v. Fitzgerald* changes the law only with respect to qualified immunity, not absolute immunity. Indeed, the Court reiterated its earlier decisions in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Butz v. Economou, supra,* that qualified immunity, not absolute immunity, represents the norm.

The majority embraces Mitchell's contention "that *Harlow* raises the availability of a special functions absolute immunity." The references in *Harlow* to the absolute immunity which might be accorded on the basis of "special functions" make it clear that the Court did not announce any new law but merely reiterated what it had previously said in *Butz v. Economou.* Mitchell concedes in his papers before us that he raised the "special functions" argument in *Forsyth I* and that it was *sub silentio* rejected by us. Appellant's Motion to Stay Trial at 9. Since *Butz* was considered by this court in *Forsyth I* and the "special functions" immunity which defendant Mitchell tenaciously reiterates was rejected under these facts, I can see no basis for holding that Mitchell raises any "serious and unsettled" question regarding absolute immunity so as to qualify under the collateral order doctrine.

Similarly, I find no precedent in *Forsyth I* for grant of interlocutory review to Mitchell a second time under the collateral order doctrine. When we considered his absolute immunity claim the first time, we had not yet settled the various legal issues presented. That is no longer the case, and the considerations warranting early review there no longer apply.

Furthermore, the posture in which the denial of summary judgment reaches us now is substantially different than it was in *Forsyth I.* Unlike the earlier appeal, the liability phase has been completed since the district court granted summary judgment to the plaintiff on the issue of liability. The only two defenses proffered, that of absolute immunity and that of qualified immunity, have been rejected. While we justified our initial interlocutory review of the denial of summary judgment on the basis of absolute immunity so that defendant would be spared a trial which a favorable disposition on immunity would obviate, we can no longer rely on that ground since Mitchell no longer faces district court proceedings on liability.

Since the liability phase of this case has been concluded, this appeal reaches us in the same posture as that of an appeal from a decision granting plaintiff judgment of liability before damages have been determined, and the nonappealability of those orders is well established. *See, e.g., Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Western Geophysical Co. of America, Inc. v. Bolt Associates, Inc.,* 463 F.2d 101, 102 (2d Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 523, 34 L.Ed.2d 489 (1972). The fact that liability was determined on summary judgment as distinguished from a bifurcated trial does not change the general principle that appellate review must await resolution of all of the plaintiff's claim. *See, e.g., Tye v. Hertz Drivurself Stations, Inc.,* 173 F.2d 317 (3d Cir.1949).

The majority suggests that Mitchell is entitled to this second interlocutory appeal from the denial of summary judgment because the remaining trial on punitive damages will entail an inquiry into his activity, his subjective intent, the presence of malice, and his financial condition. Even if the defendant chooses to testify rather than rely on his deposition, once his immunity defense has been rejected he stands in the same posture as any other defendant who seeks immediate appeal from an adverse liability determination in the hope of avoiding the burdensome and sometimes embarrassing inquiry into damages. If we are not prepared to relax the general rule precluding appeals on liability decisions in bifurcated proceedings, I see no reason to relax it here merely because the defendant proffered an absolute immunity defense which has now been rejected by the trial court.

In summary, unlike the majority, I can find no binding precedent for reviewing for a second time the district court's denial of summary judgment on the basis of absolute immunity. The *ratio decidendi* of *Forsyth I* was accomplished when it enunciated the law applicable to an absolute immunity defense, and the district court applied the law to the uncontested facts. Since no new facts have been presented and no new legal principles as to absolute immunity have been enunciated by the Supreme Court, no "serious and unsettled" question is raised.

I am also troubled that the majority chooses to refer to the merits panel that portion of the appeal which is from the denial of summary judgment on the basis of qualified immunity. This court in *Forsyth I*, in an opinion which is binding upon us as precedent, held that the denial of summary judgment on the issue of qualified immunity did not fall within *Cohen's* collateral order exception to the final judgment rule. 599 F.2d at 1209. While ordinarily a referral to the merits panel of a motion to dismiss an appeal does not adversely affect a party's rights, in this case that action, combined with the stay of the trial on punitive damages, adds another unjustified delay to the ultimate conclusion of plaintiff's case.

I share what I am sure is the majority's concern that insubstantial claims against present or former government officials should not proceed to trial. *See Harlow v. Fitzgerald,* 102 S.Ct. at 2737. Yet one can hardly label plaintiff's claim on which he has been successful on liability in the trial court as "insubstantial". Moreover, I believe that concern over subjecting government officials to unwarranted claims is best handled through adjustment of the substantive rules of law, as the Supreme Court has recently done, and not by changing the established practice of limiting appellate review of interlocutory decisions. Mitchell is not the only defendant to raise the defense of absolute immunity in cases that come before us. Local, state and federal prosecutors do so regularly in cases in which they are named as defendants, and they are entitled to no less favorable treatment than the former Attorney General. Furthermore, if the majority's reference of the qualified immunity issue to the merits panel is to presage a change from our decision in *Forsyth I* that such appeals do not fall within the *Cohen* collateral order doctrine, then we can expect myriad interlocutory appeals from all of the other government officials who are frequently sued.

The pages of current legal publications are replete with justified concern about the crushing burden under which the courts of appeals are operating. I fear that the decision of the panel today to allow this appeal under the mantle of the *Cohen* collateral doctrine order and to deny the motion to dismiss will open the sluices to a flood of interlocutory appeals crushing us even further under a weight of our own making.